## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT

## INTRODUCTION

1. I, J. Wade Beach, am a Special Agent with the Federal Bureau of Investigation and have been so employed for the past 17 years. I am assigned to the St. Louis, Missouri, field office where I have specialized in white collar crime and fraud investigations of various kinds for the past 17 years. I am responsible for, among other assignments, conducting investigations of alleged criminal violations of Title 18, United States Code, Sections 1341, mail fraud, 1343, wire fraud, and Section 1957, the money laundering spending statute.

2. I have personally participated in investigations involving the violations of federal law regarding mail fraud, wire fraud and other federal violations such as money laundering that result from such unlawful activity. I have personally participated in the execution of search warrants and seizure warrants, involving the search for various types of evidence and property. As a federal agent, I am authorized to investigate violations of the laws of the United States and to seek forfeiture of property under the authority of the United States.

3. Since approximately March 5, 2020, I have been investigating a mail and wire fraud and money laundering scheme involving Paula K. Smith ("Smith"), a former secretary/bookkeeper of the Harold E. Voss, CPA, PC, accounting firm ("Voss firm"), related to funds within the D.E.W. Trust managed by the Voss firm. Based on the results of my investigation, there is probable cause to believe that between April 2013 and June 2018, Smith fraudulently diverted $671,500 from the D.E.W. Trust via checks, which reduced the amount of funds available to properly pay the listed beneficiaries of the D.E.W. Trust, in violation of Title 18, United States Code, Section 1341 and 1343. In addition, there is probable cause to believe that Smith used some of these criminal proceeds to purchase the property listed in Attachment A in violation of Title 18, United States

1

Code, Section 1957. As such, the property listed in Attachment A is subject to civil and criminal forfeiture.

4. This affidavit does not contain all of the information known to me in regard to the investigation; however, it contains enough information to establish probable cause to authorize the seizure of the property listed in Attachment A. Although individuals are referred to herein by their initials in an effort to protect their privacy in the event that this affidavit becomes part of the public record, their identities are known to me. I respectfully submit that the information provided by these individuals is reliable and is corroborated by the independently obtained statements of other individuals as well as, in some cases, by financial records.

## STATUTORY FRAMEWORK

5. 18 U.S.C. § 1341 (mail fraud) criminalizes devising or intending to devise a scheme to defraud (or performing specific fraudulent acts) through the use of the mail.

6. 18 U.S.C. § 1343 (wire fraud) criminalizes devising or intending to devise a scheme to defraud (or performing specific fraudulent acts) through the use of an interstate telephone call or electronic communication.

7. 18 U.S.C. § 1957 (the money laundering spending statute) criminalizes knowingly engaging or attempting to engage in a monetary transaction in criminally derived property from a specified unlawful activity in an amount greater than $10,000. The term "specified unlawful activity" is defined in 18 U.S.C. §§ 1956(c)(7) and 1961(1), and it includes violations of both mail and wire fraud.

8. The proceeds of mail and wire fraud are subject to forfeiture under both civil and criminal forfeiture authorities. Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to mail or wire fraud is subject

to civil forfeiture. In addition, 28 U.S.C. § 2461(c) provides that, "[i]f a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized," then the government can obtain forfeiture of property "as part of the sentence in the criminal case." Thus, pursuant to 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to mail or wire fraud is subject to criminal forfeiture.

9.  Property involved in a money laundering offense is subject to forfeiture under both civil and criminal forfeiture authorities. Pursuant to 18 U.S.C. § 981(a)(1)(A), any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1957, or any property traceable to such property, is subject to civil forfeiture. In addition, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in a violation of 18 U.S.C. § 1957, or any property traceable to such property, is subject to criminal forfeiture. Forfeiture pursuant to these statutes applies to more than just the proceeds of the crime. These forfeitures encompass all property "involved in" the crime, which can include untainted funds that are comingled with tainted funds derived from illicit sources.

10. This application seeks a seizure warrant under both civil and criminal authority because the property to be seized could be placed beyond process if not seized by warrant.

11. Pursuant to 18 U.S.C. § 981(b), property subject to civil forfeiture may be seized by a civil seizure warrant issued by a judicial officer "in any district in which a forfeiture action against the property may be filed," and may be executed "in any district in which the property is found," if there is probable cause to believe the property is subject to forfeiture. A civil forfeiture action may be brought in any district where "acts or omissions giving rise to the forfeiture occurred." 28 U.S.C. § 1355(b)(1)(A). As detailed below, acts or omissions in furtherance of the

3

fraud and money laundering scheme under investigation occurred in the Eastern District of Missouri. The criminal forfeiture statute, 18 U.S.C. § 982(b)(1), incorporates the procedures in 21 U.S.C. § 853 (other than subsection (d)) for a criminal forfeiture action. 21 U.S.C. § 853(f) provides authority for the issuance of a seizure warrant for property subject to criminal forfeiture.

12. Based on the foregoing, the issuance of this seizure warrant is authorized under 21 U.S.C. § 853(f) and 18 U.S.C. § 982(b)(1) for criminal forfeiture; and 18 U.S.C. § 981(b) and 984, and 31 U.S.C. § 5317(c)(2) for civil forfeiture. Notwithstanding the provisions of Rule 41(a) of the Federal Rules of Criminal Procedure, the issuance of this seizure warrant in this district is appropriate under 18 U.S.C. § 981(b)(3) and 28 U.S.C. § 1355(b)(1) because acts or omissions giving rise to the forfeiture occurred in the Eastern District of Missouri.

### FACTS ESTABLISHING PROBABLE CAUSE TO BELIEVE A CRIME HAS BEEN COMMITTED

13. The Harold E. Voss, CPA, PC, accounting firm ("Voss firm") was a former accounting firm located in the Eastern District of Missouri, that, amongst other duties, managed trust accounts for clients. The Voss firm is no longer in operation.

14. D.E.W. is a former client of the Voss firm. D.E.W. maintained a revocable trust that became an irrevocable trust upon her death in February 2013 (the "D.E.W. Trust"). In February 2013, D.E.W. Trust had an approximate value of $8.6 million and over twenty named beneficiaries, including thirteen charitable organizations (twelve of which are located in the Eastern District of Missouri).

15. M.C. is a former office manager of the Voss firm who is also the current registered agent of the Voss firm. M.C. was the initial named trustee of the D.E.W. Trust and was also a $50,000 beneficiary of the D.E.W. Trust. M.C. was also appointed as D.E.W.'s legal guardian in

4

2010. On or about October 30, 2018, M.C. resigned as trustee for the D.E.W. Trust and The Midwest Trust Company was appointed as successor trustee.

16. Paula K. Smith ("Smith") is a former secretary/bookkeeper of the Voss firm. Her responsibilities included receiving and reviewing incoming mail for the D.E.W. Trust, and performing bank reconciliation work and making accounting entries for the D.E.W. Trust. Smith was not a named beneficiary of the D.E.W. Trust nor a trustee, and was not entitled to any portion of the funds within the D.E.W. Trust. On January 25, 2013, Smith and her husband filed for bankruptcy in the Eastern District of Missouri.

17. This investigation has revealed that between approximately October 11, 2013, and June 21, 2018, Smith fraudulently deposited at least $670,000 in unauthorized checks from the D.E.W. Trust to Peoples Bank & Trust and Midwest BankCentre accounts that she controlled. Smith was not due or owing any of these funds.

18. As part of the investigation, your affiant interviewed M.D., who is a Certified Public Accountant and the Owner of E.B.R.C., an accounting consulting firm.

19. In 2018, M.D. was engaged to prepare tax returns for a group of persons and entities tied to the Voss firm, to include the D.E.W. Trust. At the time, M.C. was the office manager of the Voss firm, and Smith was an employee.

20. M.D. was tasked with conducting a complete accounting of the D.E.W. Trust. M.D. re-constructed 8 years of financial and accounting records. M.D. discovered that Smith had made false journal entries to disguise the fact that she was writing checks to herself from the D.E.W. Trust.

21. M.D. requested copies of cancelled checks from Smith who resisted his requests. M.D. explained to Smith that he had a fiduciary duty to examine the trust. M.D. advised that after

5

these requests, Smith called M.C. and admitted that she (Smith) was embezzling from the trust. Smith later made a similar confession to an attorney representing the D.E.W. Trust.

22.     When D.E.W. died in February 2013, M.D. advised that the D.E.W. Trust had an approximate value of $8.6 million. M.D. advised that the beneficiaries of the D.E.W. Trust, approximately thirteen different charitable organizations, are the victims of Smith's fraud.

23.     In or about May 2014, June 2016, and December 2017, distribution checks were mailed to the beneficiaries. Each beneficiary organization received an equal share of the distributions, totaling approximately $640,000 each. However, the beneficiaries did not receive any of funds that were fraudulently diverted from the D.E.W. Trust. Thus, the amount of funds that Smith fraudulently diverted to himself was properly due and owing to the beneficiaries.

24.     The investigation has revealed that:

   a.     Between October 11, 2013, and June 21, 2018, Smith fraudulently deposited twenty-one unauthorized checks totaling $524,000 from the D.E.W. Trust Account into Midwest BankCentre account # 2006 held in the name of Smith (the "Midwest Account #2006"). "). All checks were made payable to Smith and bore the signature of M.C. None of these funds were properly due or owing to Smith.

   b.     Between September 26, 2014, and April 5, 2017, Smith deposited five unauthorized checks totaling $66,000 from the D.E.W. Trust Account into Midwest BankCentre account # 0597 held in the name of Smith ("Midwest Account #0597"). All checks were made payable to Smith and bore the signature of M.C. None of these funds were properly due or owing to Smith.

   c.     On November 10, 2017, and then on December 29, 2017, Smith fraudulently deposited two unauthorized checks, $60,000 and $20,000, respectively, from the

6

D.E.W. Trust Account into Peoples Bank & Trust checking account #▓▓7697 held in the name of Smith (the "Peoples Account"). Both checks were made payable to Smith and bore the signature of M.C. None of these funds were properly due or owing to Smith.

25.    This investigation has revealed that Smith deposited these misappropriated and unauthorized checks into her personal bank accounts, and thereafter engaged in a pattern of spending to fund personal expenses. Smith frequently made use of electronic wirings in the course of spending the money she embezzled from her employer. This use of wirings included payments to credit card accounts and ATM cash withdrawals.

26.    Your affiant worked with other investigators to identify and trace the funds obtained by Smith as proceeds of her illegal mail and wire fraud scheme. The investigative team has conducted a review of all financial records associated with the investigation, including bank statements, bank deposit records, checks, and supporting documents, property sales records, vehicle purchase records and any other financial records obtained during the course of the investigation, in order to trace funds related to the illegal activity and determine the origin of funds used by Smith to purchase and pay for the property listed on Attachment A.

**FACTS ESTABLISHING PROBABLE CAUSE TO BELIEVE THAT THE PROPERTY TO BE SEIZED IS SUBJECT TO FORFEITURE**

27.    As set forth above, between October 11, 2013, and June 21, 2018, Smith fraudulently diverted approximately $670,000 from the D.E.W. Trust Account into her various bank accounts, including Midwest Account #2006, Midwest Account #0597, and the Peoples Account. These monies are criminal proceeds from the aforementioned mail and wire fraud scheme.

**PURCHASE OF 2018 KEYSTONE HORNET HIDEOUT 26RLS TRAVEL TRAILER**

28. As set forth below, Smith used criminal proceeds from the aforementioned scheme to purchase a 2015 Keystone Hornet Hideout Travel Trailer in August 2014, and then used said travel trailer as trade-in credit, along with additional criminal proceeds, to purchase a 2018 Keystone Hornet Hideout 26RLS Travel Trailer in October 2017.

29. On August 1, 2014, Smith fraudulently deposited D.E.W. Trust Account check #2126 in the amount of $25,000 into Midwest Account #2006. The account had a balance of $664.23 prior to this deposit. Thereafter, on August 6, 2014, $3,000 was transferred from Midwest Account #2006 to Midwest Account #0597. These funds comprise of criminal proceeds from the aforementioned mail and wire fraud scheme.

30. On August 29, 2014, Smith and her husband signed a purchase agreement to purchase a 2015 Keystone Hornet Hideout 27DBS Travel Trailer, VIN: 4YDT27D26F7203967, (the "2015 Keystone") for $24,225, from Byerly RV. This travel trailer was purchased as follows:

    a. On September 3, 2014, check #1184, in the amount of $3,000 drawn on Midwest Account #2006, was made payable to Byerly as a down payment on the 2015 Keystone. Smith also received a trade-in allowance of $6,555 on a 2008 Flagstaff 2823D Travel Trailer.

    b. On September 19, 2014, check #1187 in the amount of $9,000 (drawn on Midwest Account #2006) and check #1968 in the amount of $8,000 (drawn on Midwest Account #0597) were made payable to cash and were used to purchase Midwest BankCentre (Bremen Bank at the time of activity) Cashier's Check #359131 in the amount of $16,662 payable to Byerly RV, Remitter: Paula Smith & G.S.

31. On October 18, 2017, Smith fraudulently deposited D.E.W. Trust Account check #2246 in the amount of $50,000 into the Midwest Account #2006. The account had a balance of

8

$509.21 prior to this deposit. The funds supporting this check are criminal proceeds from the aforementioned wire fraud scheme.

32. On October 16, 2017, Smith and her husband G.S. signed a purchase agreement to purchase a 2018 Keystone Hornet Hideout 26RLS Travel Trailer, VIN: 4YDT26R27J7240778, (the "2018 Keystone") for $24,905, from Byerly RV. The 2018 Keystone was purchased as follows:

    a. On or about October 16, 2017, Smith and her husband made a $200 cash down payment and received a trade-in allowance of $11,805 on the 2015 Keystone.

    b. On October 25, 2017, Midwest Account #2006, check #1534 in the amount of $12,905 was made payable to cash and was used to purchase a Midwest BankCentre Cashier's Check #120384, in the amount of $12,900 payable to Byerly Trailer & Mfg. Co., Remitter: Paula Smith.

33. On November, 22, 2017, the 2018 Keystone was registered to Smith and G.S. at 718 Barbara Dr, O'Fallon, MO 63366 (Smith's residence).

34. Based on the foregoing, the 2018 Keystone is subject to criminal and civil forfeiture as traceable to proceeds of mail and wire fraud, and as being involved in a money laundering transaction.

### PURCHASE OF 2017 CHEVROLET SILVERADO

35. On November 10, 2017, Smith deposited D.E.W. Trust Account check #2251 in the amount of $60,000 into the Peoples Account. The Peoples Account had a balance of $1,712.48, prior to this deposit. The funds supporting this check are criminal proceeds from the aforementioned wire fraud scheme.

36. On November 13, 2017, Smith and her husband G.S. signed a retail buyers order to purchase a 2017 Chevrolet Silverado K1500, VIN: 3GCUKSEC9HG495932, (the "2017 Silverado") for $48,000. The 2017 Silverado was purchased as follows:

    a. On or about November 13, 2017, Smith made a $200 cash deposit.

    b. On November 22, 2017, Peoples Account check #1009 in the amount of $47,800 was made payable to cash and used to purchase a Cashier's Check #011889 in the amount of $47,800 made payable to Jim Butler Chevrolet, Remitter: G.S. and Paula Smith.

37. On December 15, 2017, the 2017 Silverado was titled to Smith and G.S. On October 30, 2018, the 2017 Silverado was re-titled to G.S.

38. On July 16, 2019, the 2017 Silverado was registered to G.S. at 718 Barbara Dr, O'Fallon, MO 63366 (Smith's residence).

39. Based on the foregoing, the 2017 Silverado is subject to criminal and civil forfeiture as traceable to proceeds of mail and wire fraud, and as being involved in a money laundering transaction.

## CONCLUSION

40. Based on the information above, there is probable cause that between approximately April 2013 and June 2018, Smith fraudulently diverted approximately $671,500 from the D.E.W. Trust to her personal bank accounts, including Midwest Account #2006, Midwest Account #0597, and the Peoples Account, in violation of Title 18, Untied States Code, Section 1341 and 1343, and that a portion of these criminal proceeds was used to purchase the property listed in Attachment A. In addition, there is probable cause to believe that Smith's purchases of the 2018 Keystone and the 2017 Silverado constitute money laundering spending offenses in violation of 18 U.S.C. § 1957. As such, I respectfully submit there is probable cause to seize the

10

assets in Attachment A, on the grounds they are derived from the proceeds of wire fraud and are involved in money laundering offenses, and are subject to criminal and civil forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) & (a)(1)(C), 982(a)(1), and 28 U.S.C. § 2461(c).

*SA J. Wade Beach*
J. Wade Beach
Special Agent
Federal Bureau of Investigation

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41 this __17th__ day of July, 2020.

*Patricia L. Cohen*
HONORABLE PATRICIA L. COHEN
United States Magistrate Judge
Eastern District of Missouri

## ATTACHMENT A

A. 2017 Chevrolet Silverado K1500, LTZ, VIN: 3GCUKSEC9HG495932

B. **2018 Keystone Hornet Hideout 26RLS Travel Trailer, VIN: 4YDT26R27J7240778**